UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| FERRELL DAMON SCOTT | § | |
| | § | |
|    Petitioner | § | |
| v. | § | CIVIL ACTION NO. 5:11-cv-143 |
| | § | CRIMINAL ACTION NO. 5:08-cr-347 |
| UNITED STATES OF AMERICA | § | |

### OPINION AND ORDER

Pending before the Court is Ferrell Damon Scott's self-styled "Motion to Vacate Conviction (Pursuant to 28 U.S.C. Sec. 2255)."[1] After considering the motion, record, and relevant authorities, the Court **DISMISSES** the motion in its entirety. The Court **GRANTS** a certificate of appealability as stated in the conclusion.

**I.   BACKGROUND**

On March 18, 2008, a federal grand jury in Laredo, Texas, returned a four-count indictment charging Ferrell Damon Scott ("Scott") with one count of conspiring to possess with intent to distribute in excess of 1,000 kilograms of marijuana and three counts of possessing in excess of 100 kilograms of marijuana.[2] After a four-day trial, a jury found Scott guilty on all four counts.[3] The Court sentenced Scott to life in prison for Count One, and 240 months for each of the other counts, to run concurrently.[4] Judgment was entered on April 10, 2009.[5] Scott

---

[1] Dkt. No. 1. ("Dkt. No." refers to the docket number entry for the Court's electronic filing system. The Court will cite to the docket number entries rather than the title of each filing. Unless stated otherwise, "Dkt. No." will be used to refer to filings in the civil case number 5:11-cv-143. "Cr. Dkt. No." will be used to refer to filings in criminal case number 5:08-cr-347.).
[2] Cr. Dkt. Nos. 1 & 10.
[3] Cr. Dkt. No. 95.
[4] Cr. Dkt. No. 152.
[5] *Id*.

appealed his case,[6] the Fifth Circuit affirmed the judgment of conviction,[7] and the Supreme Court denied Scott's petition for a writ of certiorari.[8] On October 31, 2011, Scott filed a motion under 28 U.S.C. § 2255.[9] Although Scott makes arguments implicating multiple constitutional rights, his entire motion stems from the allegation that one juror in his case was not impartial.

## II.   DISCUSSION

### A.   Standard for Relief under 28 U.S.C. § 2255

"Relief under 28 U.S.C.A. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice."[10] Generally, § 2255 claims fall under four categories: (1) challenges to the constitutionality or legality of a sentence; (2) challenges to the district court's jurisdiction to impose the sentence; (3) challenges to the length of a sentence in excess of the statutory maximum; and (4) claims that the sentence is otherwise subject to collateral attack.[11] After conducting an initial examination of the motion, the Court must dismiss if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief."[12]

### B.   Juror Bias

Because Scott claims that his failure to raise the issue of jury partiality on direct appeal was due to his counsel's ineffective assistance, the Court will evaluate the merits of his actual juror bias claim. Additionally, juror bias implicates constitutional concerns that may be

---

[6] Cr. Dkt. No. 150.
[7] Cr. Dkt. No. 207.
[8] Cr. Dkt. No. 208.
[9] Dkt. No. 1.
[10] United States v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (per curiam) (citation omitted).
[11] 28 U.S.C. § 2255; *see* United States v. Seyfert, 67 F.3d 544, 546 (5th Cir. 1995).
[12] 28 U.S.C. § 2255, PROC. R. 4(b).

appropriately considered on collateral attack. Regarding the impartiality of jurors, the Fifth Circuit stated the following:

> The Sixth Amendment guarantees an impartial jury, and the presence of a biased juror may require a new trial as a remedy. A juror is biased if his views would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.[13]

"[A] juror must be as indifferent as he stands unsworne."[14] "The [Sixth] Amendment prescribes no specific tests. The bias of a prospective juror may be actual or implied; that is, it may be bias in fact or bias conclusively presumed as [a] matter of law."[15] "Actual bias exists when the juror failed to answer a material question honestly on voir dire, and a correct response would have provided a valid basis for a challenge for cause."[16] "[Implied bias exists in] a narrow class of relationships . . . for which a juror can be presumed biased."[17]

The Fifth Circuit has "cautioned that 'the [Supreme] Court has not looked favorably upon attempts to impute bias to jurors,' and that only '*extreme situations*' would justify such a finding."[18] In *Solis v. Cockrell*, the Fifth Circuit reviewed prior cases where it had refused to imply bias:

> [W]e rejected a contention that a juror's attenuated familial connection with the victim warranted a presumption that the juror was biased. The victim's grandson had, prior to the victim's death, been married to the juror's daughter. However, the grandson had died prior to the victim's death, and no evidence suggested that the juror even knew that he had at one time been related to the victim. We "refuse[d] to impute bias" to the juror on the basis of such a "tenuous relationship" between him and the victim. Similarly, in *United States v. Wilson* we held that "friendship with the victim of a defendant's alleged crime does not, standing alone, justify a finding of bias."[19]

---

[13] Hatten v. Quarterman, 570 F.3d 595, 600 (5th Cir. 2009) (internal quotation marks and citations omitted).
[14] Brooks v. Dretke, 418 F.3d 430, 435 (5th Cir. 2005) (internal quotation marks and citations omitted).
[15] Solis v. Cockrell, 342 F.3d 392, 395 (5th Cir. 2003) (quoting United States v. Wood, 299 U.S.123, 134 (1936)).
[16] *Hatten*, 570 F.3d at 600 (5th Cir. 2009) (citing United States v. Bishop, 264 F.3d 535, 554 (5th Cir. 2001)).
[17] *Id.* (citations omitted).
[18] Solis v. Cockrell, 342 F.3d 392, 396 (5th Cir. 2003) (quoting Andrew v. Collins, 21 F.3d 612, 620 (5th Cir. 1994)).
[19] *Id.* (citing *Andrews*, 21 F.3d at 619-21 (5th Cir. 1994); United States v. Wilson, 116 F.3d 1066, 1087 (5th Cir. 1997) *rev'd* on other grounds by United States v. Brown, 161 F.3d 256, 257 n.1 (5th Cir. 1998)).

Scott asserts that he was a victim of juror partiality and asks the Court to find both actual and implied bias. Scott's claim is based on post-trial contact between a juror, "Jane Doe," and one of the Assistant U.S. Attorneys ("AUSA") who prosecuted Scott. This contact was brought to the Court's attention months after the trial, which occurred in July 2008, but before sentencing. The Court addressed Jane Doe's post-trial contact with the AUSA in an in-chambers conference with the two prosecuting AUSAs (one being the subject of the contact) and defense counsel for both Scott and his co-defendant present. Neither Scott nor his co-defendant was present and the in-chambers conference was not recorded. The Court found that the contact occurred exclusively post-trial and did not merit further inquiry.

The Court reviews its prior order addressing this matter before considering whether Scott has raised anything in his current motion that would undermine the Court's previous determination.

1.  **Previous Order**

In its May 17, 2011 order addressing Scott's request for more information regarding a juror, this Court stated:

> In 2009, long after the conclusion of Scott's trial, the Court received information that a former juror had contacted one of the Assistant U.S. Attorneys ("AUSA") involved in Scott's prosecution. When the AUSA discovered this person was a former juror, he immediately ceased contact and the Court was notified. The Court thereafter notified defense counsel and then held an *ex parte* hearing where the juror was interviewed.
> 
> Because it appeared that this contact occurred exclusively after the trial, the Court determined that it was unnecessary to hold an evidentiary hearing. This decision is consistent with the Fifth Circuit's decision in *United States v. Sylvester*, 143 F.3d 923, 932-933 (5th Cir. 1998) (quoting *United States v. Webster*, 750 F.2d 307, 338-339 (5th Cir. 1984)) which reiterated the distinction between allegations of juror misconduct and allegations of juror tampering. In cases where mere misconduct is alleged, an *ex parte* hearing may be appropriate. At the hearing in this case the Court was able to confirm that there had been no inappropriate contact between the prosecution and the juror prior to or during the

> trial. Specifically, the Court found that there was no pretrial relationship between the juror and the AUSA and that during the trial the juror had no contact with the AUSA beyond the normal, in-court exposure to an attorney that all jurors experience. The Court also determined that the communication began *after the conclusion of the trial*. Since there was neither evidence that would support a juror tampering claim nor even evidence that would support a claim of juror misconduct, it was unnecessary to follow up with an evidentiary hearing where all parties could be present.
>
> Since the Court has determined that there was no improper contact between the prosecution and the juror during the trial, the only remaining concern is if the juror was somehow improperly influenced by an attraction to the AUSA that developed during the trial.[20]

The Court then explained that if a juror developed an attraction to the AUSA based on courtroom observations during the trial, such was an "internal" matter which the Court could not inquire into under Federal Rule of Evidence 606(b).[21] The Court then stated:

> There is no indication that the juror was anything but impartial at the outset of this trial; no evidence that the juror answered inaccurately on *voir dire*; no evidence of any outside influence on this juror during the trial; and no evidence of any communication until long after the trial concluded. In summary, Scott's requests amount to nothing more than a fishing expedition.[22]

The Court will now consider the allegations that Scott is making in his § 2255 motion.

**2. Current Allegations of Juror Bias**

Before turning to the specifics of Scott's current allegations, the Court notes that Scott's factual allegations in his § 2255 motion rely only on his "Declaration." In his "Declaration," Scott claims that he received his information from his attorney.[23] **Scott's attorney, in turn, received his information from an *ex parte* hearing where the Court asked Jane Doe when she first contacted the AUSA.** Prior to that hearing, there was no allegation that there had been any contact between Jane Doe and the AUSA before the conclusion of the trial. The sole

---

[20] Cr. Dkt. No. 210 at pp. 1-2.
[21] *Id.* at p. 2 (internal citations omitted).
[22] *Id.* at p. 3 (internal citations omitted).
[23] Dkt. No. 1 at pp. 21-22.

purpose of the hearing was to determine whether the contact began before, during, or after trial.[24] At the hearing, the Court found that all contact occurred exclusively post-trial.[25] **Scott's current allegations do not change this finding as the allegations are either based on information from Scott's attorney who only had the information available to the Court or based on Scott's speculation**. (For example, on page six of Scott's § 2255 motion, Scott directs the reader to his "Declaration" for the particulars of his allegations.[26] That declaration attributes Scott's knowledge solely to his conversation with his attorney.)[27]

The Court will consider Scott's allegations as they pertain to three distinct phases in this case. They are: (1) the pretrial period that concluded the moment that the jury was sworn; (2) the trial period that began with the swearing of the jury and concluded at the end of the trial; and (3) the post-trial period. The Court will analyze these three periods in reverse chronological order.

a.  **Post-Trial Period**

The Court notes that post-trial contact between Jane Doe and the AUSA does not directly undermine the legitimacy of the jury's verdict in Scott's case. The post-trial contact is only relevant to the extent that it indicates an earlier contact or bias. The Court previously determined that all contact between Jane Doe and the AUSA occurred exclusively post-trial. Therefore, the Court need only evaluate whether the post-trial contact indicates that Jane Doe had a bias that began before the end of the trial.

Scott would have the Court find that Jane Doe was biased based on her post-trial contact with the AUSA.[28] Even assuming that Jane Doe's decision to contact the AUSA after the trial

---

[24] In his "Declaration" Scott admits that his attorney told him that the inquiry was limited to this single issue. Dkt. No. 1 at p. 22.
[25] In his "Declaration" Scott admits that his attorney told him that "the contact was initiated by the juror through several e-mails soon after the conclusion of [Scott's] trial." Dkt. No. 1 at p. 21.
[26] Dkt. No. 1 at p. 6.
[27] Dkt. No. 1 at pp. 21-22.
[28] Dkt. No. 1 at pp. 6-8.

suggests that her feelings for the AUSA began during the trial, the Court cannot verify the existence of those feelings without the testimony of Jane Doe. As the Court will explain below, Jane Doe's testimony on that point is not only inadmissible but also unobtainable. Therefore, the Court may not find that Jane Doe developed an actual bias during trial.

To the extent Scott is arguing that the post-trial activity indicates that Jane Doe was biased before the jury was sworn, the Court finds that the connection between these events is too attenuated to merit an evidentiary hearing on actual bias. If Jane Doe developed a bias, it no doubt developed during the four days of trial after she was sworn and not during the relatively brief (2 hrs. 37 min.) jury selection hearing.

Furthermore, the Court is unconvinced that post-trial events in this case, taken alone, justify a finding of "implied bias." All contact occurred post-trial. The Court finds that the post-trial contact between Jane Doe and the AUSA does not satisfy the "extreme situation" requirement of an implied bias finding. The Court finds that Jane Doe was not impliedly biased.

**b.    Trial Period**

Turning to the trial period, Scott makes no allegations in his motion that there was improper contact between Jane Doe and the AUSA during the trial. Nevertheless, the Court highlights its previous finding "that during the trial the juror had no contact with the AUSA beyond the normal, in-court exposure to an attorney that all jurors experience."[29] Furthermore, "[a] jury is initially cloaked with a presumption of impartiality."[30]

Scott makes the claims that he "received information post-trial . . . that Jane Doe had an attraction to AUSA Ustynoski, which developed during the trial based on her observation of

---

[29] Cr. Dkt. No. 210 at p. 1.
[30] Dorsey v. Quarterman, 494 F.3d 527, 531 (5th Cir. 2007).

Ustynoski in the courtroom."[31]  Interestingly, the only evidence Scott cites for this assertion is his "Declaration," but the Declaration does not support this statement.[32]  Furthermore, the Court stands by its prior assessment that the Court may not inquire into Jane Doe's thoughts or feelings that developed during the trial as she observed the parties in the courtroom.  The Court finds that any feelings Jane Doe developed while observing the AUSA in the courtroom during Scott's trial are "internal influences."  The testimony of Jane Doe about an internal influence is not admissible to impeach the jury's verdict.[33]  Furthermore, Jane Doe is the only person who could testify about such thoughts or feelings.

In summary, the Court begins with a presumption that Jane Doe was unbiased; there is no evidence that Jane Doe developed a bias at trial; and the Court is effectively prohibited from obtaining such evidence.  Thus, the Court may not grant relief to Scott based on a theory that Jane Doe developed an actual bias during trial based on an "internal influence."

**c.    Pre-Trial Period**

Turning to the pre-trial period, Scott alleges that Jane Doe was attracted to the AUSA before she was sworn as a juror in this case and that she was dishonest in her *voir dire* responses because she did not reveal this attraction.[34]  Unlike an allegation that Jane Doe developed a bias during the trial, Federal Rule of Evidence 606(b) does not prohibit the Court from inquiring into a bias that began before Jane Doe was sworn.  Generally, "the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias."[35]  "But

---

[31] Dkt. No. 1 at p. 6.
[32] Dkt. No. 1 at pp. 6, 21-22.
[33] FED. R. EVID. 606(b); Tanner v. United States, 483 U.S. 107, 116-127 (1987).
[34] Dkt. No. 1 at pp. 3-6.
[35] Smith v. Phillips, 455 U.S. 209, 215 (1982).

the Constitution does not require an extensive inquiry into every allegation of juror bias."[36] "If an allegation of bias arises, a court must 'assess the severity of the suspected intrusion' and, if necessary, allow further inquiry."[37]

Here, the Court will first evaluate the bases for Scott's allegations that Jane Doe was actually biased before determining whether it is necessary to hold a hearing to inquire into whether Jane Doe was actually biased before she was sworn as a juror in this case.

The Court has already considered the post-trial contact between Jane Doe and the AUSA and found that it is too attenuated to merit a hearing to inquire whether Jane Doe was biased before she was sworn as a juror. The Court will now consider Scott's other allegations that Jane Doe was biased.

In a footnote, Scott speculates that Jane Doe's attraction to the AUSA may have "developed based on an observation and/or encounter which could have occurred anywhere in the courthouse (for example: in the cafeteria or any one of the many lobbies, corridors, elevators, escalators, stairwells, etc.) prior to the jury selection proceedings."[38] The Court finds that this "chance encounter" scenario is highly improbable. Court personnel go to great lengths to isolate prospective jurors and jurors from other people in the courthouse. Upon arrival, prospective jurors are directed to a jury assembly room where they are monitored by court personnel. When occupied by prospective jurors, the jury assembly room is not open to the public or even to attorneys. When the prospective jurors are moved from the jury assembly room to the courtroom for jury selection, they are escorted by court personnel. Prospective jurors simply have no opportunity for a meaningful encounter with an AUSA in the Courthouse. Similarly, once the

---

[36] Thompson v. Quarterman, 629 F. Supp. 2d 665, 677 (S.D. Tex. 2007) (citing Mu'Min v. Virginia, 500 U.S. 415, 426-28 (1991); Williams v. Bagley, 380 F.3d 932, 949 (6th Cir. 2004); United States v. Posada-Rios, 158 F.3d 832, 877 (5th Cir. 1998)).
[37] *Id*. at 677-78 (citing United States v. Sylvester, 143 F.3d 923, 934 (5th Cir. 1998)).
[38] Dkt. No. 1 at p. 4 n.2.

jurors are selected for a case and sworn, they are constantly escorted by court security officers from the time they pass through security, enter the jury room, enter the courtroom, reverse the process, and exit the secured area. Thus, a juror has no opportunity to interact with an AUSA in the courthouse beyond the normal interaction all jurors have with attorneys in the courtroom as the attorneys present their cases to the jury.

Alternatively, Scott appears to argue that Jane Doe was so smitten with the AUSA when she observed him at jury selection that she was dishonest when she failed to reveal that attraction during the *voir dire* that occurred later in the same hearing.[39] The Court also finds this "love at first sight" scenario is highly improbable. The record reflects that the entire hearing, which included the Court's general jury instructions, qualification of the panel, and *voir dire*, took less than two hours and thirty-seven minutes.[40] Yet, Scott speculates that, in the midst of this flurry of activity, Jane Doe developed such an attraction to the AUSA that she became biased and that she then lied when asked about her biases during *voir dire*.

The Court finds that Scott's "chance encounter" and "love at first sight" scenarios are entirely speculative. The Second Circuit has stated:

> Post-trial jury scrutiny is disfavored because of its potential to undermine "full and frank discussion in the jury room, jurors' willingness to return an unpopular verdict, and the community's trust in a system that relies on the decisions of laypeople." Accordingly, probing jurors for "potential instances of bias, misconduct or extraneous influences" after they have reached a verdict is justified "only when reasonable grounds for investigation exist," in other words, where there is "*clear, strong, substantial and incontrovertible evidence that a specific, nonspeculative impropriety has occurred which could have prejudiced the trial*." The inquiry should end whenever it becomes apparent to the trial judge that "reasonable grounds to suspect prejudicial jury impropriety do not exist."[41]

---

[39] Dkt. No. 1 at pp. 3-6.
[40] Cr. Dkt. No. 65 (Time noted as 9:00 to 11:37 a.m. but pretrial matters concluded at 9:14 a.m. and some time would have been used to seat the panel).
[41] United States v. Stewart, 433 F.3d 273, 302-03 (2d Cir. 2006) (emphasis added) (quoting Tanner v. United States, 483 U.S. 107, 120-21 (1987); United States v. Moon, 718 F.2d 1210, 1234 (2d Cir.1983)).

On a similar note, the Fifth Circuit has stated:

> "Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value. We are thus bound to re-emphasize that mere conclusory allegations do not raise a constitutional issue in a habeas proceeding."[42]

Additionally, "[w]hile a mere self-serving affidavit alleging circumstances with which the trial judge should be familiar does not require an evidentiary hearing, when the record discloses other credible documentary evidence which indicates a right to relief, an evidentiary hearing may be necessary."[43]

Here, the trial judge is well familiar with the circumstances giving rise to these allegations. Furthermore, the Court finds that Scott's scenarios are entirely speculative and unsupported by credible documentary evidence; they do no constitute reasonable grounds to suspect jury impropriety. Therefore, the Court will not hold an evidentiary hearing to explore Scott's speculative scenarios.

In summary, Scott's allegations of juror bias are based exclusively on the post-trial contact between Jane Doe and the AUSA. The post-trial contact is too attenuated to merit further investigation. Now, Scott has added two speculative scenarios to the post-trial contact. Even taken together, the post-trial contact and the two speculative scenarios are insufficient to merit further inquiry. The Court will not hold an evidentiary hearing to determine whether Jane Doe was biased before she was sworn as a juror in this case.

C.   **Hearing with Jane Doe**

Scott challenges the *ex parte* nature of the hearing that the Court held with Jane Doe. To be clear, there was never an allegation of juror *tampering* in this case, and the Fifth Circuit has

---

[42] Ross v. Estelle, 694 F.2d 1008, 1011-12 (5th Cir. 1983) (citations omitted).
[43] Vandenades v. United States, 523 F.2d 1220, 1223 (5th Cir. 1975) (citations omitted).

held that *ex parte* hearings may be appropriate in juror *misconduct* cases.[44] When the Court was first notified of the post-trial contact between Jane Doe and the AUSA, it was, of course, concerned that there may have been juror misconduct. Once the Court examined Jane Doe, it became readily apparent that there was no juror misconduct in this case. Because a trial court has discretion as to the type of investigation to conduct,[45] the Court finds that the *ex parte* hearing was appropriate.

Scott also argues that his due process rights were violated because he was not given the opportunity to question Jane Doe through the Court or counsel.[46] The Court disagrees. As noted above, the Fifth Circuit has approved *ex parte* hearings in juror misconduct cases. Scott had no right to control the questioning in an *ex parte* hearing. Furthermore, the Fifth Circuit has stated:

> A defendant has a right to be present at a proceeding "whenever his presence has a relation, reasonably substantial, to the fulness of his opportunity to defend against the charge." His absence from such a proceeding amounts to a due process violation only "to the extent that a fair and just hearing would be thwarted by his absence, and to that extent only."[47]

Here, the Court held a hearing for the sole purpose of confirming that all contact between Jane Doe and the AUSA occurred exclusively post-trial. Scott does not claim to have any independent knowledge regarding the post-trial contact between Jane Doe and the AUSA. A fair and just hearing on that narrow issue was not thwarted by Scott's lack of notice of the hearing, by his absence from the hearing, or by his inability to question Jane Doe. This claim is without merit.[48]

---

[44] United States v. Sylvester, 143 F.3d 923, 932-33 (5th Cir. 1998).
[45] United States v. Parker, 549 F.2d 998 (5th Cir. 1977).
[46] Dkt. No. 1 at p. 8.
[47] Green v. Johnson, 116 F.3d 1115, 1124 (5th Cir. 1997) (citations omitted).
[48] *Parker*, 549 F.2d at 1000 ("[D]iscretion was not abused by an investigation in which only the judge interrogated those concerned.").

**D.     28 U.S.C. § 753(b) Compliance**

Scott also argues that the Court violated 28 U.S.C. § 753(b) because it did not record the hearing with Jane Doe.[49] The Court notes that since its original order addressing this matter the Court has referred to the in-chambers interview as a "hearing." Although it will not change terminology at this point, the Court notes that the "hearing" was nothing more than an incredibly brief inquiry *in chambers*. The Court permitted the attorneys to attend as passive spectators and the Court's inquiry was limited to determining when Jane Doe's contact with the AUSA began. Once again, that contact began post-trial.

The Court regrets that it did not cause the hearing to be recorded. But, this regret is not based on doubts about what occurred at the hearing. Not even Scott disputes what happened at the hearing or what was revealed at the hearing. Scott asserts that his attorney told him that "Judge Alvarez only asked the juror one question that being was there any contact during the trial? And that was it and the so called hearing was terminated."[50] His attorney also told him "that the contact was initiated by the juror through several e-mails soon after the conclusion of [Scott's] trial."[51] Here, the Court only regrets that it is now necessary to expend judicial resources to address Scott's § 753(b) claim. That statute states in relevant part:

> (b) Each session of the court and every other proceeding designated by rule or order of the court or by one of the judges shall be recorded verbatim by shorthand, mechanical means, electronic sound recording, or any other method, subject to regulations promulgated by the Judicial Conference and subject to the discretion and approval of the judge. The regulations promulgated pursuant to the preceding sentence shall prescribe the types of electronic sound recording or other means which may be used. Proceedings to be recorded under this section include (1) *all proceedings in criminal cases had in open court*; (2) all proceedings in other cases had in open court unless the parties with the approval of the judge shall agree specifically to the contrary; and (3) such other proceedings as a judge of the

---

[49] Dkt. No. 1 at p. 9.
[50] Dkt. No. 1 at p. 22.
[51] Dkt. No. 1 at p. 21.

> court may direct or as may be required by rule or order of court *as may be requested by any party to the proceeding*.[52]

The Court has reviewed the statute, and nothing in the statute required the Court to record the hearing because the hearing was held in chambers and the parties did not request that the hearing be recorded. This conclusion is squarely supported by Fifth Circuit precedent:

> This assignment of error is tangentially related to the assignment of error that the charge conference which took place in chambers was not reported. There was no request that it be reported and the statute, 28 U.S.C.A. § 753(b), requires only that proceedings in open court be reported. We hold that the charge conference in chambers was not in open court and thus the claimed error is without merit.[53]

In another case, the Ninth Circuit reached a similar conclusion:

> Although no Ninth Circuit precedent is directly on point, dicta from two prior cases indicate that *conferences held in chambers are not within section 753(b)*.
>
> * * *
>
> A literal reading of section 753 suggests that because the pretrial conference took place in chambers, not in court, recordation was not mandatory. The section gives some discretion to district courts over the recordation of matters not held 'in open court.' Moreover, the statute entitles 'any party to the proceeding' the right to recordation upon request. While to some extent the statute contemplates that district courts enjoy a measure of discretion in the handling of chambers conferences, counsel can protect the record by (a) obtaining stipulations or submitting proposed orders for pretrial conference agreements, or (b) requesting that pretrial chambers conferences be recorded.[54]

Because the hearing was held in chambers and the parties did not request that it be recorded, the Court was not required to cause the hearing to be recorded. In short, the Court's failure to cause the hearing to be recorded was imprudent, but it was not illegal. Ultimately, the Court finds that Scott's 28 U.S.C. § 753(b) claim is without merit.

---

[52] 28 U.S.C. § 753(b) (emphasis added).
[53] United States v. Jenkins, 442 F.2d 429, 438 (5th Cir. 1971).
[54] United States v. Hein, 769 F.2d 609, 610-11 (9th Cir. 1985) (per curiam) (emphasis added) (citations omitted).

### E.  Court's Prior Order

Scott accuses the Court of misstating the record in its prior order.[55]  Upon review, he appears to be merely quibbling with the Court's timeline of the post-trial contact between Jane Doe and the AUSA.  The precise timing of post-trial events is immaterial to the ultimate issue of whether there was juror bias in this case.  The Court will not grant relief based on alleged factual discrepancies that are immaterial.

### F.  Ineffective Assistance of Counsel

Scott claims he received ineffective assistance of counsel.  Ineffective assistance of counsel is a violation of the Sixth Amendment right to counsel, a claim of constitutional proportion permitted under 28 U.S.C. § 2255.  Under the pertinent two-prong test, Scott must show (1) that counsel's performance fell below an objective standard of reasonableness, and (2) that Scott suffered prejudice as a result.[56]  In assessing whether counsel was constitutionally deficient, "a court must indulge a strong presumption that counsel's conduct [fell] within the wide range of reasonable professional assistance."[57]

Here, Scott claims that his counsel was ineffective in handling the biased-juror allegation in both the district court and on appeal.[58]  Scott claims that his attorney should have told him about the *ex parte* hearing so that Scott could supply questions to ask the juror.  On this issue, the Court will not address the reasonableness prong of *Strickland* because Scott was not prejudiced.  Even had Scott been present at the hearing, the Court did not permit either side to question the juror.  Therefore, even if Scott had known about the hearing beforehand and provided his attorney with questions, it would not have changed anything.  His counsel was not ineffective in

---

[55] Dkt. No. 1 at p. 8 & n.3.
[56] Strickland v. Washington, 466 U.S. 668, 687-88 (1984).
[57] *Id*. at 689.
[58] Dkt. No. 1 at pp. 1-3, 8-9.

handling the hearing. Similarly, to the degree that Scott is claiming that his attorney failed to properly pursue the juror bias issue in the district court, the Court finds that Scott was not prejudiced because there was nothing for his attorney to pursue.

Scott claims that his attorney was ineffective for failing to raise the issue of a biased juror on appeal. Once again, the Court will not address the reasonableness prong because Scott was not prejudiced by his attorney's actions. The Court found that Scott's biased-juror allegations are without merit. Scott's counsel was not ineffective for failing to raise a meritless issue on appeal.[59]

### G.     Proceeding Under 18 U.S.C. § 3006A

Scott asks the Court to open a proceeding under 18 U.S.C. § 3006A and to provide him with appointed counsel and other services. Because the Court is able to dismiss Scott's claims based on the current record, the Court will not appoint counsel or provide Scott with the other services he is requesting.

### III.    CONCLUSION

After reviewing the motion, record, and relevant authorities, the Court **DISMISSES** Scott's 28 U.S.C. § 2255 motion in its entirety. The Court **GRANTS** a certificate of appealability on the issue of whether it is now necessary to conduct a hearing in open court on the record to re-establish that the only contact between Jane Doe and the AUSA was post-trial.

IT IS SO ORDERED.

DONE this 11th day of October, 2012, in McAllen, Texas.

_____
Micaela Alvarez
UNITED STATES DISTRICT JUDGE

---

[59] Williams v. Collins, 16 F.3d 626, 634-635 (5th Cir. 1994).